JEFFREY M. VUCINICH, SBN #: 67906
ELIZABETH D. RHODES, SBN #: 218480
CLEVE B. COLLADO, SBN #: 297000
CLAPP, MORONEY, VUCINICH,
BEEMAN and SCHELEY
A PROFESSIONAL CORPORATION
1111 Bayhill Drive, Suite 300
San Bruno, CA  94066
(650) 989-5400  (650) 989-5499 FAX

Attorneys for Defendants
OFFICER DANIEL CANCILLA and
OFFICER STEVE HUMRICH

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN YOUNG, | CASE NO.: 4:18-cv-01931-DMR |
| Plaintiff, | |
| v. | **DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |
| CITY OF EAST PALO ALTO POLICE OFFICERS DANIEL CANCILLA and STEVE HUMRICH and DOES 1 - 50, | |
| Defendants. | Date:        December 13, 2018<br>Time:        11:00 a.m.<br>Courtroom:  4, 3rd Floor<br>Judge:       Hon. Donna M. Ryu |
| | Complaint filed: March 29, 2018<br>Trial Date:  November 4, 2019 |

## I.  INTRODUCTION

This lawsuit results from plaintiff STEVEN YOUNG's ("Plaintiff") arrest by defendants OFFICER DANIEL CANCILLA and OFFICER STEVE HUMRICH ("Defendants") who were lawfully performing their jobs. During a probation search, Plaintiff was found with a small amount of rock cocaine base and $4,301.00, at which point he was placed under arrest, transported and booked into the San Mateo County Jail for possession of rock cocaine base for sales. This entire lawsuit must be dismissed because a) all state law based claims are barred; b) the *Monell* claim is unstated; and c)

qualified immunity attaches to all remaining constitutional claims.

## II.  STATEMENT OF FACTS

During a routine probation search on May 2, 2017, Defendants found Plaintiff in possession of suspected rock cocaine base and $4,301.00 of US currency in various denominations (Separate Statement of Undisputed Facts ("SSUF") ¶ 5). Plaintiff resisted/delayed the Defendants by fighting them (SSUF ¶ 4). Plaintiff, along with one other suspect, were placed under arrest, transported, and booked into the San Mateo County Jail for possession of rock cocaine base for sales (SSUF ¶ 4).

On March 29, 2018, Plaintiff filed a Complaint alleging seven causes of action against the Defendants, including: (1) violation of plaintiff's fourth and fourteenth amendment rights; (2) *Monell*'s claim; (3) conversion; (4) battery; (5) negligence; (6) intentional infliction of emotional distress; and (7) negligent infliction of emotional distress. (SSUF ¶ 6). On June 14, 2018, Defendants filed their respective answers to the Complaint.

## III.  ARGUMENT

Plaintiff's federal claims allege Constitutional violations pursuant to 42 U.S.C. 1983 arising from violation of his due process rights, and violation of his zone of privacy (SSUF ¶ 6).  Plaintiff's state claims are for conversion, common law negligence, battery, intentional and negligent infliction of emotional distress (*Id.*).

### A.  <u>FEDERAL STANDARD FOR SUMMARY JUDGMENT</u>

Federal Rule of Civil Procedure 56(c) provides that "the moving party is entitled to summary judgment as a matter of law" when "there is no genuine issue of material fact."  Importantly, however, the moving party's burden is discharged when reference to the "pleadings, depositions, answers to interrogatories, and admissions on file" show an absence of proof to support the essential elements of the non-moving party's case. FED. RULE CIV. PROC. 56(d); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The U.S. Supreme Court has provided that the motion should be granted so long as what is before the district court demonstrates that the Rule 56(c) standard is satisfied.  *Celotex*, 477 U.S. at 323.  While a district court should draw all permissible inferences in favor of the non-moving party, *Ruffin v. County of Los Angeles*, 607 F.2d 1276, 1279 (9th Cir. 1979), if the moving party

demonstrates evidence that no genuine issue of material fact exists, "the burden then shifts to the opponent to come forward with specific facts showing that there remains a genuine factual issue for trial." *Id.* at 1280; *Celotex*, 477 U.S. at 323; *Steckl v. Motorola, Inc.*, 703 F.2d 393, 393 (9th Cir. 1983). Importantly, mere conclusory statements opposing a motion for summary judgment will not satisfy a non-movant's burden to rebut the opposing side's motion. *See Id.* Rather, the opposing party must raise significant, probative evidence to defeat such a motion, and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

A "mere scintilla" of evidence, such as a plaintiff's testimony misconstruing the actual state of events, will not suffice. See generally 10A C. Wright, et al., FEDERAL PRACTICE AND PROCEDURE, Section 2727, at 165-69 (2d ed. 1983). Plaintiffs bear the burden of proof at trial, and thus the moving party need not produce evidence at the summary judgment stage negating or disproving every essential element of the opposing party's case. *Celotex*, 477 U.S. at 325. Instead, the moving party meets its burden by merely establishing an absence of evidence supporting the non-moving party's case. *Id.* at 323.

## B.   PLAINTIFF'S STATE LAW CLAIMS ARE BARRED BECAUSE PLAINTIFF FAILED TO FILE A GOVERNMENT TORT CLAIM

In his Complaint, Plaintiff has alleged conversion (3rd Cause of Action); battery (4th Cause of Action), negligence (5th Cause of Action); intentional and negligent infliction of emotional distress (6th and 7th Cause of Action) (SSUF ¶ 6). Nowhere does he plead, nor can he plead that a Government Tort Claim was filed (SSUF ¶ 6). Based on the allegations, he has failed to state any state law claims for failure to exhaust his administrative remedies.

California's Tort Claims Act requires that a tort claim against a public entity or its employees be presented to the appropriate agency for the particular municipality, no more than six months after the cause of action accrues. Cal. Gov't Code §§ 905.2, 910, 911.2, 945.4, 950-950.2 (West 2007). Presentation of a written claim, and action on or rejection of the claim are conditions precedent to suit. *State v. Superior Court of Kings County (Bodde)*, 32 Cal.4th 1234, 1245, 90 P.3d 116, 124, 13 Cal.Rptr.3d 534, 543 (2004); *Mangold v. California Pub. Utils. Comm'n*, 67 F.3d 1470, 1477 (9th Cir.

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT; CASE NO. 4:18-cv-01931-DMR                3

G:\Data\DOCS\0539\95573\Rule 56 MSJ\MPA.wpd

1   1995). To state a tort claim against a public employee, a plaintiff must allege compliance with the Tort

2   Claims Act. *State v. Superior Court*, 32 Cal.4th at 1245, 90 P.3d at 124, 13 Cal.Rptr.3d at 543; *Mangold*,

3   67 F.3d at 1477; *Karim-Panahi v. Los Angeles Police Dept.* (9th Cir. 1988) 839 F.2d 621, 627.

4          Here Plaintiff has not made any such allegation, because no government tort claim was filed.

5   The Court should, with respect, dismiss these claims for failure to file a government tort claim.

6          1.      Plaintiff Cannot Amend His Complaint to Fix this Fatal
                   Defect

7

8          Government Code Section 911.2 requires that personal injury tort claims be served on the

9   entity "not later than six months after the accrual of the cause of action."

10         The Tort Claims Act codified in the Government Code provides that "the date of the accrual

11  of a cause of action to which a claim relates is the date upon which the cause of action would be

12  deemed to have accrued within the meaning of the statute of limitations which would be applicable

13  thereto if there were no requirement that a claim be presented to and be acted upon by the public entity

14  before an action could be commenced thereon." (Gov. Code, § 901.)

15         The California Supreme Court explained accrual under the Tort Claims Act as follows:"A

16  cause of action accrues for purposes of the filing requirements of the Tort Claims Act on the same date

17  a similar action against a nonpublic entity would be deemed to accrue for purposes of applying the

18  relevant statute of limitations.  (Gov. Code, § 901.)

19         The "rule delaying accrual until the plaintiff has discovered or should have discovered the facts

20  establishing the essential elements of his or her cause of action originated in cases of medical

21  malpractice *(Huysman v. Kirsch* (1936) 6 Cal.2d 302, 306-313 [57 P.2d 908]), and progressive

22  occupational illness *(Marsh v. Industrial Acc. Com.* (1933) 217 Cal. 338, 351 [18 P.2d 933]), but

23  California courts have since recognized its application to other tort actions.   These have included

24  attorney malpractice *(Neel v. Magana, Olney, Levy, Cathcart & Gelfand* (1971) 6 Cal.3d 176, 190 [98

25  Cal.Rptr. 837, 491 P.2d 421]), liability for defective drugs *(Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d

26  1103, 1109 [245 Cal.Rptr. 658, 751 P.2d 923]), invasion of privacy *(Cain v. State Farm Mut. Auto.

27  Ins. Co.* (1976) 62 Cal.App.3d 310, 315 [132 Cal.Rptr. 860]), libel *(Manguso v. Oceanside Unified*

28

1  *School Dist.* (1979) 88 Cal.App.3d 725, 731 [152 Cal.Rptr. 27]), and underground trespass *(Oakes v.*

2  *McCarthy Co.* (1968) 267 Cal.App.2d 231, 255 [73 Cal.Rptr. 127]).   The rule has been applied as well

3  in certain cases arising from contract, such as breaches committed in secret and without immediately

4  discoverable harm *(April Enterprises, Inc. v. KTTV* (1983) 147 Cal.App.3d 805, 832 [195 Cal.Rptr. 421]),

5  negligent breach of contract to ship personal goods *(Allred v. Bekins Wide World Van Services* (1975) 45

6  Cal.App.3d 984, 991 [120 Cal.Rptr. 312]), and negligent breach of contract to conduct termite inspection

7  *(Seelenfreund v. Terminix of Northern Cal., Inc.* (1978) 84 Cal.App.3d 133, 136-139 [148 Cal.Rptr.

8  307]).'' *(Evans v. Eckelman* (1990) 216 Cal.App.3d 1609, 1614, 265 Cal.Rptr. 605.)

9        Here, the Plaintiff was arrested on May 2, 2017 (SSUF ¶¶ 2-4). Based on the above, Plaintiff

10  had until November 2017 to file a claim under the Tort Claims Act. However, Plaintiff did not file

11  anything under the said Act and proceeded to file his Complaint on March 29, 2018 (SSUF ¶ 6, 8).

12  As such, not only has Plaintiff failed to file a Government Tort Claim, too much time has elapsed, i.e.

13  more than 6 months, so that he can no longer file a claim under the said claim.

14      **C.**    **PLAINTIFF'S ARGUMENT THAT DEFENDANTS ARE BEING SUED**

15           **AS INDIVIDUALS IS MERITLESS AS THE DEFENDANTS WERE**
         **ACTING IN THEIR CAPACITY OF AGENTS OF THE CITY OF EAST**

16           **PALO ALTO**

17        Personal-capacity suits seek to impose personal liability upon a government officer for actions

18  he takes under color of state law, whereas official-capacity suits against an officer are generally treated

19  as suits against the governmental entity of which the officer is an agent. With this distinction in mind,

20  it is clear that a suit against a government officer in his or her personal capacity cannot lead to

21  imposition of fee liability upon the governmental entity. *Kentucky v. Graham* 473 U. S. 160, 165-168.

22        As described in more detail below, the actions that Plaintiff outlines in his complaint were

23  clearly taken while the Defendants were acting in their employment as officers for the City of East

24  Palo Alto (SSUF ¶¶ 1-2). Defendant CANCILLA was familiar with the area where Plaintiff was

25  arrested and he knew it was a known area for narcotic related crimes *(Id.)*. He were executing a valid

26  probation search when he, along with HUMRICH found rock cocaine base and $4,301.00 in Plaintiff's

27  possession (SSUF ¶¶ 2-5). As such, the Defendants were not acting under the color of state law, but

28

1   were acting as agents of a governmental entity, i.e. the City of East Palo Alto. Moreover, as discussed

2   in more detail below, the Defendant's actions are shielded by qualified immunity since they never

3   veered from the course and scope of their probation search of the plaintiff (SSUF ¶ 9.)

4   **D.   PLAINTIFF'S *MONELL* CLAIM IS NOT STATED AS PLAINTIFF DID**
        **NOT FILE SUIT AGAINST A MUNICIPALITY**

5

6       A public entity is liable under§ 1983 only where the constitutional violation is the result of

7   an official custom, policy, or practice. There is no respondeat superior liability under section 1983.

8   *Monell v. Dept. of Soc. Servs.* 436 U.S. 658 (1978); see *City of Canton v. Harris*, 489 U.S. 378, 398

9   (1989). Before a public entity can be liable under *Monell*, it must be determined that the Plaintiff's

10  constitutional rights were violated by an employee of the public entity. *City of Los Angeles v. Heller*

11  106 S.Ct. 1571 (1986). Without an underlying constitutional violation, there is no basis for a *Monell*

12  claim. A single incident of unlawful action is not sufficient to prove an unconstitutional policy, custom

13  or practice for purposes of *Monell. City of Oklahoma v. Tuttle*, 471 U.S. 808 (1985).

14      Here, the only defendants in this matter are OFFICERS CANCILLA and HUMRICH, both of

15  which work for the City of East Palo Alto (SSUF ¶ 6). However, the City of East Palo Alto is not named

16  as a party in this matter, defendant or otherwise (SSUF ¶ 7.). Since the *Monell* ruling applies to public

17  entities, and there is no public entity being sued, then Plaintiff's *Monell* claim should be dismissed.

18  **E.   QUALIFIED IMMUNITY PROTECTS DEFENDANTS FROM ALL**
        **CLAIMS BROUGHT PURSUANT TO §1983 SINCE PLAINTIFF WAS**

19      **LAWFULLY  ARRESTED  AND  THE  DEFENDANTS  USED**
        **REASONABLE FORCE TO DO SO**

20

21      "[Q]ualified immunity protects government officials performing discretionary functions from

22  liability for civil damages 'insofar as their conduct does not violate clearly established statutory or

23  constitutional rights of which a reasonable person would have known.'" *Bartell v. Lohiser*, 215 F.3d

24  550, 556 (6th Cir. 2000) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Thus, the primary

25  inquiry in qualified immunity analysis is whether a reasonable officer could have believed his or her

26  actions were lawful in light of the information he or she had at the time of the incident. *Hunter v.*

27  *Bryant*, 502 U.S. 224, 227 (1991) (citing *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)).

28

1  In interpreting qualified immunity, the U.S. Supreme Court has provided that it "gives ample

2  room for mistaken judgments by protecting 'all but plainly incompetent officers or those who

3  knowingly violate the law.'" *Id.* at 229 (quoting *Malley v. Briggs*, 475 U.S. 335, 343 (1986)).

4  Similarly, in *Scott v. Henrich*, the 9th Circuit provided the following:

> The appropriate inquiry is whether the officers acted reasonably, not
> whether they had less intrusive alternatives available to them [...]
> Requiring officers to find and choose the least intrusive alternative
> would require them to exercise superhuman judgment (39 F.3d at 915.)

8  Thus, qualified immunity, as a legal premise, provides broad protection to police officers, and

9  shields them from liability if they act within a range of conduct identified as "reasonable." *Id.*;

10  *Graham*, 490 U.S. at 397; *Illinois v. Lafayette*, 462 U.S. 640, 647 (1983); *United States v. Martinez-*

11  *Fuerte*, 428 U.S. 543, 556-57 (1976).

12  The overriding public policy behind qualified immunity is that officers "should not err always

13  on the side of caution because they fear being sued." *Hunter*, 502 U.S. at 229 (*quoting Davis v.*

14  *Scherer*, 468 U.S. 183, 196 (1984)); *see also Sloman v. Tadlock*, 21 F.3d 1462, 1468 (9th Cir. 1994)

15  (stating that qualified immunity for reasonable exercises of discretion by police officers will prevent

16  lawsuits from deterring able people from public service. Importantly, the U.S. Supreme Court has stated

17  that "[i]mmunity ordinarily should be decided by the Court long before trial." *Hunter*, 502 U.S. at 228.

18  Qualified immunity is an "immunity from suit rather than a mere defense to liability," and thus immunity

19  is a matter of law that is most appropriate for the summary judgment stage. *Id.* at 227.

20  Due process claims against a peace officer survive only where there is no other, more specific

21  amendment that addresses the claim at issue. For example, any type of seizure - whether a search, an

22  arrest, or use of force - must be asserted under the more specific and applicable provisions of the

23  Fourth Amendment. *Graham v. Connor*, supra; *County of Sacramento v. Lewis*, 523 U.S. 833 (1998).

24  To the extent due process considerations apply to the acts of individual officers, there is no obligation

25  to protect an individual from even foreseeable harm from outside sources unless the individual is in

26  actual custody or confined care. *DeShaney v. Winnebago County*, 109 S.Ct. 998 (1989).

27  / / /

28

In addition, force utilized by officers must be reasonable when judge from the perspective of a reasonable officer on the scene, not in hindsight. Reasonableness allows for the fact that officers are "often forced to make split second judgments - in circumstances that are tense, uncertain, and rapidly evolving - about the amount of force that is necessary in that particular situation." *Graham v. Connor*, 490 U.S. 386 (1989). The reasonableness inquiry is objective; the officer's subjective intent is irrelevant.

For the reasons above, qualified immunity attaches to the acts of OFFICERS CANCILLA and HUMRICH alleged in the Complaint (SSUF ¶ 9). When CANCILLA made contact with Plaintiff, Plaintiff appeared to be agitated and was holding what was determined to be a straight razor blade in his right hand (SSUF ¶ 3). CANCILLA advised Plaintiff that he was going to conduct a pat down search, Plaintiff stood up and faced away from him while stating that he was not going to be searched without a warrant (SSUF ¶¶ 3-4.) Fearing for his safety and the safety of the officers on scene, CANCILLA grabbed Plaintiff's left hand with his left hand in attempt to stand him up (SSUF ¶¶ 3-4). Plaintiff resisted and then clenched his right fist in a ball and threw his fist toward CANCILLA's upper chest area toward his face (SSUF ¶¶ 3-4). CANCILLA dodged Young's right hand and was able to catch his right wrist (SSUF ¶¶ 3-4). CANCILLA placed his right hand on Young's right elbow and used his body weight which forced us to the ground with him laying on top of Young (SSUF ¶¶ 3-4). CANCILLA attempted to place handcuffs on Plaintiff but Plaintiff kept pulling his arm away (SSUF ¶¶ 3-4). HUMRICH held Plaintiff's legs in place, while other officers assisted them in detaining and eventually arresting Plaintiff (SSUF ¶¶ 3-4).

As can be seen above, Defendants only used the amount of force reasonable to place Plaintiff under arrest. CANCILLA feared for his safety seeing the straight razor blade and therefore, CANCILLA had an obligation to protect himself from foreseeable harm. As such, qualified immunity shields OFFICERS CANCILLA and HUMRICH.

/ / /

/ / /

/ / /

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT; CASE NO. 4:18-cv-01931-DMR                    8

G:\Data\DOCS\0539\95573\Rule 56 MSJ\MPA.wpd

## IV. CONCLUSION

As explained above, the Plaintiff's tort claims outrightly fail as he failed to follow the California Tort Claims Act outlined in California Government Code Sections 810-996.6. Moreover, the Defendants were acting in their capacity of officers for the City of East Palo Alto and Plaintiff has failed to name the City as a party to this matter. Therefore, Plaintiff's *Monell* claim also fails. Lastly, qualified immunity applies the Defendant's actions as Plaintiff was lawfully arrested and Defendants only used the amount of force that was reasonable to effectuate the arrest. Thus, for the foregoing reasons, the Court should grant summary judgment/adjudication in favor of Defendants.

DATED: November 8, 2018

CLAPP, MORONEY, VUCINICH, BEEMAN and SCHELEY

By: _____
JEFFREY M. VUCINICH
ELIZABETH D. RHODES
CLEVE B. COLLADO
Attorneys for Defendants
OFFICER DANIEL CANCILLA and
OFFICER STEVE HUMRICH